Please support Donald McPherson on behalf of the defendant. Good morning. Good morning, Your Honor, and I'm duty bound to inform the court that in preparation for this case yesterday, I discovered plain error with respect to what the court told the jury the defendant was charged with in the instructions and how the court instructed. That is, the court did not instruct anything with respect to intent to distribute, even though that's what my client was convicted of, possession of methamphetamine with intent to distribute. I inform Mr. Lopez of this this morning. I intend to file a motion this week with the court asking for supplemental briefs. I realize that will be a decision to be made at that time, but I think that's a better solution in the interest of justice than waiting on a 2255. Well, unfortunately, though, it's not before us right now, correct? Yes, Your Honor. At the earliest opportunity, I want to inform the court of that discovery. Your Honor, the issue then before the court, given that the government concedes a remand with respect to resentencing under Ameline three is the admission of a hearsay statement. And they basically say it's much to do about nothing that the evidence was overwhelming. We strongly disagree. This case boils down to a swearing match between two witnesses. What do we look at when we decide whether it's hearsay or not? What's the first thing we have to decide? Yes, whether or not it was offered for the truth of the matter asserted. Was it? Yes, Your Honor, it had to be because. Was it offered for the truth of the matter or was it offered to show how he made appointments with the defendant? Well, first of all. That's the difference? Yes, Your Honor, but the jury has never informed what purpose. There's no limited instruction. There's an objection by defense sidebar conference. No limited instruction. Defense moves to strike and the court denies the motion. So the jury. Did the defense ask for a limiting instruction at the sidebar? No, he failed to, Your Honor. What does that mean? Does that mean that issue of whether or not there should be a limiting instruction is reviewed for plain error? I either that or it's tied in with the harmless error issue with respect to the admission of the hearsay. Isn't it two steps? No, go ahead. Two steps. One is whether or not it's hearsay or not. That's number one. And if it's not hearsay, so that, I think, is preserved. But the second step is then if it's not hearsay, should a limiting instruction be given that it can't be considered for truth? Now, on that second issue, no request was made for limiting instruction, right? So is that reviewed for plain error? Yes, Your Honor, that would be. However, I see an obligation on behalf of not just the defendant here but the prosecutor. The prosecutor asked the question twice. And the prosecutor has a duty to ensure a fair trial here. And, again, they say, well, much to do about nothing because we have all this other evidence. Well, do you concede that the court does not have a sua sponte duty to give a limiting instruction? Oh, absolutely. Okay. So then you're saying either, okay, so there's no sua sponte duty on the court's part, but you're saying the prosecutor has a duty? I think the prosecutor has a duty when he has solicited the two sentences in which Mr. Rodriguez says, my wife told me I could buy methamphetamine from the defendant. Well, where would I find support in the case law for that duty on the prosecutor's part? It seems to me that if the defense attorney, if the defendant wanted a limiting instruction, then the defendant should have asked for it because the prosecutor is still of the view that they properly admitted it and the court went along with it. Except that sidebar, the prosecutor should have said it's not offered for the truth of the matter, it's offered for such and such purpose, and then the court could give a limiting instruction. What are you saying, it's an error on the part of the prosecutor not to ask for a limiting instruction? I think the prosecutor's part of the problem. He solicited the statement twice. The statement goes in, it's sidebar, everyone has an opportunity, the defense and the prosecutor have the opportunity to ask for whatever remedy they want, and it's obvious that once the court denies the motion to strike, then the issue becomes for what purpose is it offered? And I think the jury, the jury sitting there, they've heard the evidence. They have to assume it's been offered for the truth of the matter because they have not been instructed otherwise. So then we come down to the test, the ultimate test, and that is whether or not it's more probable than not harmless, and we get into measuring the two key witnesses, and it's basically a swearing match by two witnesses. Frankly, neither one has more credibility than the other, and the government goes into a litany of discrepancies with respect to my client's testimony. Well, it's no different with respect to his key witness, Rodriguez, and it's, again, much ado about nothing as to discrepancies. Well, I guess from the standpoint, I still am ultimately going to, even if I bought every argument, that we still have to get down to what the evidence was that went to the jury, and if, in fact, the evidence was overwhelming, then you're faced with a harmless error issue, and here you've got two people in the car, right? And was it 224? What was the amount? It was between 50 and 500. I forget the exact amount. No fingerprints of anything. But they're both in the car, and it's in a secret compartment in the car, and I guess what, there's something hanging from the driver's side, and your client says he doesn't know where he's going, and then when he testifies, his testimony is different than that, so for whatever reason, the jury's got to evaluate that, and then you've got his co-defendant getting up and saying how they, you know, what their whole plan was, and so the jury's got to decide whether they're going to believe the co-defendant, and then there's some discussion about this Colorado contact, and there's evidence about some phone calls on the cell phone from Colorado, right? Yes, but Rodriguez has possession of the phone. So, you know, I guess what, the jury does have to make a, any way you look at it, the jury would have to make a credibility decision about whether they believe that co-defendant, and I'm just having a hard time seeing how that prior statement would make any difference in the long run. How would that really be? I guess the most damning way that you could look at that prior statement is it makes your client a drug dealer. Absolutely. Two sentences in which basically the witness says, I was told by my wife that this guy's a drug dealer. I'm just wondering, though, how that would really factor into when you've got to stop with the police, there's two of them in the car, there's what? There's a gun. There's a gun in the car, there's a whole bunch of dope in the car, there's the co-defendant's testimony, there's the cell phone thing. I don't see how the jury would even really be concerned about that. There's plenty of other damning evidence that they have to decide who they believe or not. Understood, Your Honor. However, Rodriguez is the only one that calls my client, the defendant, a drug dealer. And then when he says the wife says he's a drug dealer, that makes the second person. Until we have that, we only have Rodriguez's testimony. No one else testified. We don't have no one else testify concerning dealing drugs with my client. We have no fingerprints of anything in the car, the gun, the drugs, the glove compartment, the vial. The Rodriguez, not the defendant, has the gun in the vial.  So I think when you examine it closely, it's really a toss-up as to the credibility between these two witnesses. You know, rather than recite the facts of the case, I think maybe she did examine it closely. How much closer do you think she has to take a look? You said if she'd examined it closely, what would you find that we don't know already? It sounds like you know pretty much. However, Colorado, as to where he's going, he said, I'm going to Colorado. I don't know the city. At first blush, what the government says makes sense. But when you examine it more closely, it can be picked apart. And that's what we attempted to do in our reply. So with the reply brief and examination of that and what I've said today, I don't think there is anything more the court could say. Do you want to save a little time for rebuttal?  Okay, thanks. Thank you, Your Honor. Thank you. Good morning. May it please the Court, my name is John Lopez. I'm an assistant United States attorney in the District of Arizona. I represent the United States in this matter on appeal and represented the government at trial. With respect to... One could assume from this record that when the question was asked, the response was not known in advance, the hearsay allegation. But what do we look at when we decide whether there is hearsay in this record that may have persuaded the outcome of the case? Yes, Your Honor. With respect to the sidebar, the district court judge did call a sidebar and essentially asked more or less, where are you going with this question or this line of questioning? And I stated clearly on the record, although I did not request a limiting instruction and perhaps I should have, I explained to the court that I was trying to set the context, the background for how it was that Mr. Rodriguez came to know the defendant and to set the context for their relationship. Well, it seems to pretty well establish that he's a drug dealer. I mean, why couldn't it just be, well, my wife introduced me to him or something along those lines? Your Honor... That he's a drug dealer is pretty sexy when you've got him caught in a car with a whole bunch of dope in the glove compartment or the secret compartment. That's correct, Your Honor. Your Honor, the government had, I submit, ample, sufficient, and perhaps overwhelming direct evidence that the defendant was a drug dealer. Mr. Rodriguez testified that he purchased drugs from Mr. Harris, from the defendant. He sold drugs with the defendant. He lived in his apartment and sold drugs out of his apartment. His entire relationship, more or less, was based upon the use and distribution of drugs, and that was the reason that these two were together headed to Colorado to deliver methamphetamines. The government did not rely in any way on the one statement that the introduction between Mr. Rodriguez and Mr. Harris was based on a drug deal. And, in fact, I did not mention, the government did not mention once in opening or closing statements. Well, those are all good reasons why it may not be harmless error, but that still doesn't really, that's not a really good reason as to why it was done in the first place. I mean... It was simply done to provide background context and to complete the story. But he'd been a dope, that he was a drug dealer longer than just his drug dealing with his co-defendant? In retrospect, Judge, I probably would not have asked the question in all candor. It wasn't necessary. The government did not need that, and I was attempting, more or less, to create a smooth background, a transition to provide context for how it was that Mr. Rodriguez met the defendant, Mr. Harris. Mr. Lopez, Judge Ferris, in one of his earlier questions, said he was assuming that when you asked the question, you didn't know the answer. Is that so, or did you know the answer? The question of how it was that Mr. Rodriguez came to meet Mr. Harris? Yes. I knew that the answer to the question, Mr. Rodriguez had told me previously, during our meetings and trial preparation, that he first met Mr. Harris when he bought drugs from him. That was the only way that he knew him. Did he tell you about the statement of the wife? He did not, Your Honor. So it was a surprise to you? It was somewhat of a surprise, yes, Your Honor. You know, this exception of giving context to me is a little bit surprising, although it's been around in the case law for a while. It's not enumerated in the rules, right, as a recognized exception to the hearsay rule, is it? That's correct, Your Honor. I believe that the closest that you could come to that would be the inextricably intertwined evidence doctrine or something along those lines, but I'm not aware that it's actually codified in the rules. Given that it's not in the rules, it seems to me it's so close to, even if there might be an exception, it's so close to being offered for the truth, it's almost impossible to separate that aspect of it that it seems to me that some kind of liberty instruction should be given. But beyond that, did the district judge consider, you know, the 403 issue about the probative value versus the prejudicial effect? There was no discussion on the record of that issue, Your Honor. And nobody raised that issue? That's correct, Your Honor. And I will concede out of the box that this is a closer call, it's a closer application than Busbee and Ortiz and some of the other cases that were cited to the court. I raised the argument because it was not my intent to demonstrate that the defendant was a drug dealer. Through the testimony, the out-of-court statement of Mr. Rodriguez's wife, it was simply to provide background and context to inform the jury how it was that Mr. Rodriguez first met Mr. Harris. And, in fact, Mr. Harris's testimony was that he first met Mr. Rodriguez through Mr. Rodriguez's wife, but the defendant testified that Mr. Rodriguez attempted to sell the defendant food stamps fraudulently, and that was their first meeting. I also don't know whether the defendant raised this issue. I don't think it's specifically raised at best. But this case manufactured, case made exception was established before the rules of evidence were adopted, way back in the 50s or 60s, right? That's correct, Your Honor. Has it been affirmed as being embodied in the federal rules since then? I don't know if that's the case, Your Honor, but the cases I cited, Your Honor, is correct. They date back to the 1960s. However, case law cited by Mr. McPherson indicated that the rule would continue to be applicable in more recent case law. With respect to harmless error, the court- Let me, what's the evidence that, let's just assume this is, let's assume that it's hearsay or just, you know, that it shouldn't have come in, and that what that says is that it was hearsay evidence that he was a drug dealer. What evidence of a non-hearsay sort was there in the record that he was a drug dealer, aside from the stop, all the circumstances of the stop? Well, Mr. Rodriguez testified at length that the defendant was a drug dealer. Again, he testified that he bought drugs from the defendant, that he sold drugs from the defendant, that he sold drugs out of the defendant's apartment with the defendant. He testified at length that he had a year-long relationship with the defendant, which was based upon the use and sale of drugs. Other non-hearsay evidence which demonstrates the defendant's guilt, not necessarily that he was a drug dealer directly, but was, in my view, a very damning piece of evidence, was that the defendant had maintained all along that his defense was that he had been duped by Mr. Rodriguez to unknowingly operate this red car, to drive it to Colorado, with no knowledge that there was drugs in a hidden compartment or that the purpose of the trip was to deliver the drugs. He told the FBI agent the day of his arrest, in his post-arrest interview, that the only reason he was in that car... He is which one? The defendant. That the only reason the defendant was in the car was to drive the car because Mr. Rodriguez didn't have ID and was afraid to drive the car. That was his innocent explanation for being in the car. When he took the stand and testified at trial, he said that Mr. Rodriguez actually began driving to Colorado from Phoenix on the day of their arrest, and it was only when Mr. Rodriguez's driving became so erratic as to be unsafe that the defendant convinced Mr. Rodriguez to let the defendant drive the car. That was... He undermined his defense through his own testimony at trial, and I submit that that, standing alone with his presence in the car, would have been adequate for the jury to infer guilt. Well, maybe it's adequate, but as Mr. McPherson says, essentially this case was a sworn contest between two witnesses, right? Each of which had their, you know, obviously own self-interest. So that's a little bit a different context than saying there was, you know, ample evidence to support the verdict, right? Even if there was. Well, Your Honor, a swearing contest, in my opinion, would describe a few situations where people are saying different things in a vacuum with no context in which to judge their credibility. Mr. Rodriguez's testimony was subject to cross-examination, and I submit, and the record will bear out, that his story held up under cross-examination. The defendant's did not, and in fact, again, the defendant's only explanation for why he was instantly in the car was that he was driving on behalf of Mr. Rodriguez at Mr. Rodriguez's request. But the defendant himself said that Mr. Rodriguez, in fact, began driving on the trip and would have driven the entire way, but for the fact that he was driving, he came around it. All right. I note your time is up, unless there's further questions by the panel. Thank you. Thank you. Your Honor, aside from failure to get fingerprints, you would think with the cell phone records they would call the numbers and find out who's making the phone calls and solicit one witness in addition to Mr. Rodriguez. And by the way, Mr. Rodriguez, the evidence shows, had possession of the cell phone during the subject period of time. I would like to come back to the question concerning plain error and point out that if there is plain error here, then it's been waived by the government because they have not raised that issue in their appellate brief. They've only raised the issue of harmless error. So I've got a waiver issue myself. With respect to jury instructions, they've got a waiver issue with respect to plain error. And unless the Court has questions. All right. Thank you. This matter, just I should indicate to you, you know, we have not conferenced on this matter and we will after. But at presently, it will stand submitted. And so, you know, I obviously will have to discuss as a panel whether, you know, I can't commit to you that we're going to necessarily wait for any communication from you. You've indicated what your intent is. Understood. That will be something that we'll discuss. Thank you. Thank you.
judges: Farris, Tashima, Callahan